UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**WINIFRED D. BRAGG, M.D.,**

Plaintiff,

v.                                            Civil Action No. 2:06cv347

**ORTHOPAEDIC ASSOCIATES OF
VIRGINIA, LTD.,**

**ROBERT S. NEFF, M.D.,**

**JOHN S. WAGNER, M.D.,**

**LAWRENCE M. SHALL, M.D.,**

**SHELDON L. COHN, M.D.,**

**and**

**JANE SUMMERLIN,**

Defendants.

## ORDER AND OPINION

Currently before the court is the defendants' Motion for Summary Judgment, filed with attached supporting exhibits pursuant to Federal Rule of Civil Procedure 56. After examination of the briefs and record, this court determines that oral argument is unnecessary because the facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. The court, for the reasons stated fully herein, **GRANTS** the defendants' motion for summary judgment.

1

I.  Factual Background

The plaintiff, Winifred D. Bragg, M.D., is an African-American physiatrist who began

practicing medicine with defendant Orthopaedic Associates of Virginia ("OAV"), a Norfolk-

based practice specializing in orthopaedic medicine, in June of 1998.  In June of 1999, the

plaintiff and OAV entered into an agreement, entitled the Model Parity Physician Agreement

("the Agreement"), which would govern their relationship.  See Defendants' Exhibit A.  In

entering into the agreement, the plaintiff was represented by counsel.  The plaintiff became a

"voting partner" in OAV in 2000, and was appointed as chairperson of the OAV finance

committee in 2003.  In January of 2005, the plaintiff became a shareholder in the OAV

professional corporation, an officer, and a member of OAV's board of directors.  At that time,

the plaintiff entered into a shareholder agreement with OAV's existing shareholders.  See

Defendants' Exhibit B.

The plaintiff complains of a pattern of racial discrimination by the defendants, which

ultimately led her to leave OAV in August of 2005 in order to practice medicine elsewhere.

Aside from OAV, the other defendants are white: Defendants Neff, Wagner, Shall, and Cohn are

orthopaedic surgeons who are shareholders in OAV and members of its board.  Defendant

Summerlin is the practice administrator and an employee of OAV.  The plaintiff claims that the

discrimination was part of a policy put into effect by the defendant-physicians in order to force

her to resign, so that OAV's board of directors could again be a "white men's club."

II.  Procedural History

On June 19, 2006, the plaintiff filed a complaint in the Circuit Court for the City of

Norfolk, Virginia, alleging that the defendants had violated Title VII of the Civil Rights Act of

1964, 42 U.S.C. § 2000e, in discriminating against her because of her race and in creating such an intolerable work environment that she was constructively discharged.  The complaint also made several state-law claims, all of which were centered on the same predicate facts as the Title VII claim.  On June 22, 2006, after having received a courtesy copy of the complaint, the defendants removed the case to this court, noting that the court has federal question jurisdiction over the Title VII claim, and supplemental jurisdiction on the other claims.  On July 6, 2006, the defendants filed an answer to the complaint.

On July 20, 2006, the plaintiff filed a motion to remand the case back to state court, asserting that the case had been removed prematurely and that a forum selection clause existed in the Agreement that required that any litigation concerning the Agreement be heard in the Norfolk Circuit Court.  On July 31, 2006, the defendants responded to the plaintiff's motion to remand and urged the court to deny the motion.  The plaintiff did not file a reply brief.  On September 6, 2006, this court denied the plaintiff's motion to remand, finding that the clause in question was only a "consent to venue" clause, and did not bind the parties to litigate in Norfolk Circuit Court. Further, the court found that the removal had not taken place prematurely, but in fact was in accordance with the statute permitting removal, 28 U.S.C. § 1446(b).  Thus, the court retained jurisdiction over the action.

After this court entered an agreed order permitting the plaintiff to amend her complaint, the plaintiff filed an amended complaint on December 1, 2006, adding a claim against the defendants under 42 U.S.C. § 1981.  The defendants filed an answer on December 15, 2006. After the plaintiff filed a motion for voluntary dismissal of her complaint on December 21, 2006, the defendants responded by urging the court to dismiss the claims with prejudice, or permit

dismissal without prejudice but require the plaintiff to pay the defendants' attorneys' fees.  In lieu of dismissing the complaint, however, the court, on January 12, 2007, continued the case <u>sua sponte</u>.

On February 2, 2007, the defendants filed the instant motion for summary judgment, arguing that there exist no genuine issues of material fact, and that they are entitled to judgment as a matter of law.  With their motion, the defendants filed a memorandum in support thereof, along with attached exhibits.  The plaintiff filed a response brief, along with exhibits, on February 13, 2007.  The defendants replied, along with further documentary exhibits, on February 16, 2007.  The defendants also moved to strike certain declarations that were submitted by the plaintiff in opposition to the motion for summary judgment, on the grounds that the declarations constitute hearsay, and are therefore inadmissible under Rule 56(e) of the Federal Rules of Civil Procedure.[1]

III.  Standard of Review

Summary judgment under Federal Rule of Civil Procedure 56 is only appropriate when the court, viewing the record as a whole and in the light most favorable to the non-moving party, determines that there exist no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law.  <u>See, e.g.</u>, <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-24 (1986); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248-50 (1986); <u>Terry's Floor Fashions, Inc. v. Burlington Indus., Inc.</u>, 763 F.2d 604, 610 (4th Cir. 1985).  In Title VII cases, the Fourth Circuit,

---

F ED. R. CIV. P. 56(e) provides that affidavits filed in support of or opposition to summary judgment shall be made in personal knowledge and shall set forth such facts as would be admissible in evidence.  Therefore, an affidavit based on hearsay not covered by an exception would be inadmissible to be considered on summary judgment.

although cautioning against overuse, has determined that summary judgment may be entered if there are no genuine issues of material fact.  See Ballinger v. North Carolina Agric. Extension Ser., 815 F.2d 1001, 1005 (4th Cir. 1987).

Once a party has properly filed evidence supporting the motion for summary judgment, the non-moving party may not rest upon mere allegations in the pleadings, but must instead set forth specific facts illustrating genuine issues for trial.  Celotex Corp., 477 U.S. at 322-24.  Such facts must be presented in the form of exhibits and sworn affidavits.  Failure by the plaintiff to rebut the defendants' motion with such evidence will result in summary judgment.  "[T]he plain language of Rule 56 mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Id. at 322.  Although the moving party bears the initial burden of stating the basis for its motion, that burden can be discharged if the moving party can show "an absence of evidence to support the non-moving party's case."  Id. at 323, 325.  After the moving party has discharged the burden, the non-moving party must then designate specific facts showing that there is a genuine issue of material fact.  Id. at 324.

To enter summary judgment, a court does not need to determine that there are no factual issues in dispute.  To find against the moving party, however, the court must find both that the facts in dispute are material and that the disputed issues are genuine.  A factual dispute is deemed to be material if it is dispositive of the claim.  See Thompson Everett, Inc. v. National Cable Advertising, L.P., 57 F.3d 1317, 1323 (4th Cir. 1995).  Similarly, a factual dispute is considered genuine if it is based on more than speculation or inference.  Celotex Corp., 477 U.S. at 327; Runnebaum v. NationsBank of Md., N.A., 123 F.3d 156, 164 (4th Cir. 1997) (en banc),

5

overruled on other grounds by Bragdon v. Abbott, 524 U.S. 624 (1998).

While it is the movant's burden to show the absence of a genuine issue of material fact,

Pulliam Investment Co., Inc. v. Cameo Properties, 810 F.2d 1282, 1286 (4th Cir. 1987), it is the

non-movant's burden to establish the existence of such an issue.  See Matsushita Elec. Indus. Co.

v. Zenith Radio Corp., 475 U.S. 574, 585-587 (1986).  "The mere existence of a scintilla of

evidence in support of the plaintiff's position will be insufficient; there must be evidence on

which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252.  To survive

summary judgment, the non-moving party must present evidence that is "significantly probative."

Celotex Corp., 477 U.S. at 327.

IV.  Analysis

A.  Applicability of Title VII

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, is designed to protect

employees from discrimination by their employers.  Its protection therefore extends only to those

who can properly be deemed "employees."  Although Title VII defines an employee, somewhat

circularly, as "an individual employed by an employer," 42 U.S.C. § 2000e(f), a recent Supreme

Court case has shed light on this definition.  See Clackamas Gastroenterology Assocs. v. Wells,

538 U.S. 440 (2003).  In Clackamas, the Court addressed whether a shareholder and director in a

professional corporation counted toward the number of employees under the Americans with

Disabilities Act of 1990, which applies only to businesses with fifteen or more "employees." Id.

at 442; 42 U.S.C. § 12111(5).[2]

_____

[2]Although the Court was addressing the definition of an "employee" in the context of an
ADA claim, it noted that its holding would apply in the context of other statutes, including, inter
alia, Title VII.  Clackamas, 538 U.S. at 444 n.3 ("The disagreement in the Circuits is not

The Court noted that the focus of inquiry should be on "the common-law touchstone of control." Clackamas, 538 U.S. at 449.  Adopting the standard proposed by the EEOC, the Court ruled that a six-factor test is appropriate for determining whether an individual is an "employee" and therefore is permitted to seek affirmative relief through a Title VII action.  The six factors to be considered are:

> [1] Whether the organization can hire or fire the individual or set the rules and regulations of the individual's work[;]
> [2] Whether and, if so, to what extent the organization supervises the individual's work[;]
> [3] Whether the individual reports to someone higher in the organization[;]
> [4] Whether and, if so, to what extent the individual is able to influence the organization[;]
> [5] Whether the parties intended that the individual be an employee, as expressed in written agreements or contracts[;]
> [6] Whether the individual shares in the profits, losses, and liabilities of the organization[.]

Id. at 449-50 (quoting EEOC Compliance Manual § 605:0009).

Although the Fourth Circuit does not appear to have addressed the definition of "employee" in the context of Title VII since Clackamas, other courts have done so.  See, e.g., Solon v. Kaplan, 398 F.3d 629, 634 (7th Cir. 2005) (finding, as a matter of law, that a general partner of a law firm was not an employee for purposes of Title VII); Fitzgibbons v. Putnam Dental Assocs., P.C., 368 F.Supp.2d 339, 343 (S.D.N.Y. 2005) (holding that the sole shareholder of a dental practice was not an employee for purposes of Title VII).  Applying the factors set fourth in Clackamas to the facts of this case yields the unmistakable conclusion that the plaintiff is not an "employee" within the meaning of Title VII, and is therefore not entitled to bring an

---

confined to the particulars of the ADA.  For example, the Seventh Circuit's decision in EEOC v. Dowd & Dowd, Ltd., 736 F.2d 1177 (1984), concerned Title VII . . . .").  Further, the Court noted that the same principle would apply in the context of whether a plaintiff is an "employee" who might invoke the protections of the ADA (or Title VII).  Clackamas, 538 U.S. at 447 n.6.

action under that statute.

The plaintiff acknowledges that she was a shareholder of OAV and a member of its board of directors.  Amended Complaint, at ¶ 10.  Prior to that, she was a voting partner and was tasked with chairing OAV's Finance Committee.  Id. at ¶¶ 9 & 22.  The Agreement, entered into by the plaintiff shortly after she began to practice with OAV, includes a provision by which she might be terminated for cause.  Specifically, the Agreement requires that, if the plaintiff fails to adhere to certain ethical principles or damages the professional reputation of OAV or its physicians, OAV's board of directors may terminate her services by a two-thirds supermajority vote.  Defendants' Exhibit A, at ¶ 3(a).  Further, the agreement provides that if the plaintiff were to breach any term or any rule promulgated by OAV's board, she would be given time to cure such breach.  Only in the event that she failed to cure the breach or repeatedly committed a breach could she then be removed, again by a two-thirds vote of OAV's board of directors.[3]  Id. at ¶ 3(c).

The plaintiff's argument, that the first two Clackamas factors support a finding that she is an employee, is unsupported.  The plaintiff was not merely someone who could be fired at the whim of a supervisor; instead, she had significant contractual protections against termination, and, as a member of OAV's board, would have been permitted in many instances to vote on her own termination.  Further, she was given broad discretion to set her work hours and choose the

---

[3]The Agreement in ¶ 3(a) requires a two-thirds majority absent the individual in question, if she is a member of the board.  Paragraph 3(c) has no such restriction.  Thus it would seem that, at the time of the plaintiff's departure from OAV, a vote to terminate her position under ¶ 3(a) would have required the support of three of the remaining four directors to pass.  To remove her under ¶ 3(c) would have required the support of all four, presuming that the plaintiff would have opposed her own termination.

office locations at which she would work.  She set her own vacations and other time away from work.  See Defendants' Exhibits 11-12.  She ordered her own equipment and directed the work of non-physician employees.  See Defendants' Exhibits 13-14.  In fact, she was in charge of OAV's physical therapy practice.  The plaintiff also had direct access to OAV's bank account, gave direction to OAV's attorneys, and had the authority to hire employees without consulting others.  See Defendants' Exhibits 16, 18, & 20.  Therefore, the first and second Clackamas factors clearly support the conclusion that the plaintiff was not an "employee."

The plaintiff argues that the true power at OAV was vested in a smaller cadre of senior white doctors, who met in small unofficial meetings to make decisions for presentation to the board of directors.  However, the record does not bear these allegations out.  Instead, the record is remarkably consistent in pointing to the conclusion that the physicians at OAV, and in particular the shareholders in the practice, felt themselves as equal partners and ran the practice in light of that belief.  See, e.g. Deposition of Dr. Neff, Defendants' Exhibit G, at 25 ("I consider all my partners to be equal regardless of their title or status.").  While the plaintiff was not entitled to unilaterally bind OAV in certain situations, neither were the other physician-directors.  Perhaps even more significantly, as a shareholder, the plaintiff had an equity interest and was entitled to share in the profits of the corporation.

Although she was subject to the Agreement, a document which is replete with references to the plaintiff as an "employee," the Court was clear in Clackamas in holding that "the mere existence of a document styled "employment agreement" [does not] lead inexorably to the conclusion that either party is an employee." Clackamas, 528 U.S. at 450.  It is clear to the court, then, that no reasonable fact-finder could conclude that the plaintiff was an employee of OAV.

9

See also Solon v. Kaplan, 398 F.3d 629, 633 (7th Cir. 2005) (finding that a law firm's general partner was not an "employee" because, inter alia, the partnership agreement allowed for his involuntary termination only by a two-thirds vote of the general partners, and he had an equity interest in the firm).  Therefore, she is not entitled to avail herself of the protection of Title VII, and summary judgment is appropriate as to her Title VII claim against the defendants.

B.  Discrimination

Even if the plaintiff's Title VII claim was not barred by the holding in Clackamas, the plaintiff would be unable to succeed on her claim for discrimination against the defendants. Because a prima facie case under § 1981 is made in the same fashion as under Title VII, the court will analyze the plaintiff's Title VII and § 1981 claims together.  As the plaintiff's Title VII claim fails even when considered on its merits, so the plaintiff's § 1981 claim also must fail.

The plaintiff's claims of employment discrimination fall under the rubric of Title VII and § 1981.  Title VII prohibits employers from failing or refusing to hire or discharging any individual, or otherwise discriminating against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.  42 U.S.C. § 2000e-2(a)(1).  Employers are also forbidden to "limit, segregate, or classify [their] employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(2).  42 U.S.C. § 1981 similarly prohibits impairment of freedom of contract on the basis of race.

The plaintiff's claims of discrimination can be broken down into three categories: (1) that

she was subject to disparate treatment by her employer; (2) that she was retaliated against by her employer for engaging in a protected activity; and (3) that her employer created a hostile work environment for her.  A plaintiff may establish a claim of discrimination or retaliation in one of two ways.  First, the plaintiff may present direct or indirect evidence of the discriminatory animus alleged.  Brinkley v. Harbour Recreation Club, 180 F.3d 598, 607 (4th Cir. 1999).  In order to defeat summary judgment, the plaintiff must demonstrate "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision."  Fuller v. Phipps, 67 F.3d 1137, 1142 (4th Cir. 1995).

If such evidence is not available to the plaintiff, she may rely on the burden-shifting scheme as articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) and its progeny.  This scheme requires the plaintiff to establish a prima facie case of discriminatory action, which gives rise to a presumption of discrimination.  Id. at 802.  Establishment of this presumption shifts the burden to the defendant to produce a legitimate, non-discriminatory reason for its action.  Id. at 802-03.  It is a burden of production, as opposed to a burden of proof, that the defendant has.  If it meets this burden of production, the presumption of discrimination vanishes, and the plaintiff must show that the employer's proffered explanation is simply a pretext for intentional discrimination.  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000).

"An employer is entitled to summary judgment if the plaintiff fails to establish a prima facie case of discrimination" or fails to show that the employer's proffered legitimate non-discriminatory reason is unworthy of belief.  Henson v. Ligget Group, Inc., 61 F.3d 270, 274 (4th Cir. 1995); see also Reeves, 530 U.S. at 143.  If "no rational fact-finder could conclude that the

action was discriminatory," the plaintiff cannot withstand the defendant's motion for summary

judgment. Id. at 148. Here, the plaintiff has not presented any direct or indirect evidence of a

discriminatory animus on the part of the employer, and therefore must rely on setting out a prima

facie case.[4]

i.  Disparate Treatment

To establish a prima facie case of disparate treatment based on race, color, sex, or age, the

plaintiff must show that (1) she is a member of a protected class; (2) she was subject to an

adverse employment action; and (3) she was treated differently than similarly situated employees

outside of her protected class. Texas Department of Community Affairs v. Burdine, 450 U.S.

248, 253 (1981). Here, the plaintiff, who is black, is clearly a member of a protected class.

However, she cannot demonstrate that she was subject to any adverse employment action. An

adverse employment action stems from an employer's conduct that materially alters the terms,

conditions, or benefits of employment. Von Gunten v. Maryland, 243 F.3d 858, 866 (4th Cir.

2001). An inquiry into the adverse nature of an employer's action ordinarily focuses on whether

the employee has suffered termination, demotion, decrease in pay or benefits, loss of job title or

supervisory responsibility, or decreased opportunities for promotion. Boone v. Goldin, 178 F.3d

---

[4]To the extent that the plaintiff relies upon the allegations that Summerlin used a racial epithet when referring to the plaintiff, such evidence is at least second-level hearsay. Summerlin denies making such remarks, and Karen Honey, from whom the plaintiff claims she first heard of the alleged remarks, has denied that she heard them or discussed any racial insult with the plaintiff at all. See Declaration of Karen Honey, Defendants' Exhibit N, at ¶ 5. Even assuming the truth of the allegation, the court notes that the plaintiff never heard the racial epithet, and there is no evidence that any other defendant made racially inappropriate comments. Because Summerlin, the practice administrator, was a subordinate of the plaintiff, any comment attributed to her could not possibly serve as evidence of a discriminatory animus on the part of the plaintiff's employer.

253, 255 (4th Cir. 1999).  "[D]ecisions having no immediate effect upon employment conditions

. . . were not intended to fall within the direct proscription of [Title VII]."  Page v. Bolger, 645

F.2d 227, 233 (4th Cir. 1981) (en banc).

The plaintiff has alleged various specific acts of discrimination, yet all but two of them

cannot be considered "adverse employment actions" for the simple fact that they did not result in

a change in the conditions of the plaintiff's employment.  That the plaintiff's name was not listed

on OAV's website for over a year after she was hired did not materially alter the terms,

conditions, or benefits of her employment.  Likewise, the fact that the plaintiff did not receive a

"welcoming party" does not constitute an adverse employment action.  More serious, perhaps, is

the allegation that the plaintiff, unlike other doctors at OAV, was forced to wait eighteen months

in order to receive voting privileges.  The plaintiff cites the deposition testimony of Wagner and

a copy of the minutes of a meeting to support this assertion, but neither citation provides any

support therefor.  In fact, the meeting minutes indicate that the plaintiff was in favor of keeping

the time limit for voting at eighteen months.  Plaintiff's Exhibit D ("Dr. Bragg presented to the

group her recommendation that the physician contract regarding voting privileges should stay as

is - 18 months to vote.").  Therefore, the plaintiff cannot demonstrate that she was subject to an

"adverse employment action."

The plaintiff also avers that she was excluded from essential business decisions, and that,

when the doctors met to discuss the termination of Dr. Felix Kirven, a black physician and

shareholder of OAV, the plaintiff was kept "out of the loop."  The record, however, indicates

otherwise: the plaintiff was in attendance for more than 88% of the regular meetings that OAV

would normally have on the first and third Wednesday of each month.  See Defendants' Exhibit

V.  The plaintiff does not dispute that this attendance record is in line with the attendance of OAV's other physicians at these meetings.  The deposition testimony further indicates that no other meetings took place, and that the one shareholder meeting that any defendant can recall was the meeting that took place to vote on the termination of Dr. Kirven.  Although the plaintiff alleges that she was excluded from that meeting, this allegation is belied by the fact that she gave her proxy to Dr. Kirven prior to the meeting.  At the meeting, he exercised the proxy and voted both his shares and the plaintiff's shares in favor of his own removal.  The decision to terminate Dr. Kirven was therefore unanimous.  Even if the plaintiff were able to demonstrate that she was excluded from business decisions, she has failed to demonstrate how those decisions constituted adverse employment actions.  The same is true with the plaintiff's claims that the defendants attempted to require her to do rounds at a hospital, and threatened to reduce her salary if she did not do so.  In fact, the plaintiff was not required to do rounds, and did not have her salary reduced as a result.  Deposition of Dr. Shall, Defendants' Exhibit 6, at 110-12.  Therefore, any claim that this constitutes an "adverse employment action" is ludicrous.

The plaintiff claims that she was required to repay a debt she owed to OAV after overestimating her bonuses.  This cannot constitute an "adverse employment action," as the audit requested by the plaintiff showed that, indeed, she had overdrawn her pay and therefore owed $17,000 to OAV.  Deposition of Summerlin, Defendants' Exhibit 2, at 175.  Even if this might technically constitute an "adverse employment action" because it involves a "decrease in pay," the plaintiff cannot demonstrate that she was treated differently than other employees outside of her class.  In fact, when other physicians found out that they owed money to OAV, they were also required to make repayments.  See Deposition of Dr. Wagner, Defendants' Exhibit 9, at 100-01;

14

Deposition of Dr. Neff, Defendants' Exhibit 8, at 144-45.  Thus, this claim of discrimination must fail.

In similar fashion, the plaintiff's claims that the defendants systematically diverted patients away from her, although conceivably constituting "adverse employment actions," must fail as prima facie evidence of discrimination because the plaintiff cannot prove that she was treated differently than the other doctors, who are white males.  Much of the evidence submitted by the plaintiff in support of her claim of patient diversion is in the form of declarations, almost all of which contain inadmissible hearsay.  However, even were the court to consider the declarations for the truth of the matter contained–that patients who were referred to the plaintiff by other doctors were instead being diverted to different doctors at OAV–the plaintiff cannot demonstrate that patients of other doctors at OAV were not diverted to her, or that her patients were being diverted more often.  The testimony of Leslie Weimer, a receptionist at OAV, demonstrates that, although the plaintiff complained the most about mis-directed referrals, other doctors also complained.  Deposition of Leslie Weimer, Defendants' Exhibit L, at 23.  Weimer further indicated that, other than the fact that the plaintiff complained the most, there was no other evidence that indicated that she suffered the most patient diversion.  Id. at 63.  Indeed, after the plaintiff complained about patient diversion, OAV conducted two audits of patient referrals within the practice, both of which found only minor errors in referrals, none of which were to the disadvantage of the plaintiff.  See Deposition of Dr. Bragg, Defendants' Exhibit C, at 41-52, 133-34, 136, & 220-21; Deposition of Summerlin, Defendants' Exhibit F, at 99-100.  Therefore, the plaintiff cannot demonstrate that she was treated differently than other employees outside of her class with regard to the alleged patient diversion, and therefore cannot make out a prima facie

case of discrimination.

ii.  Retaliation

To establish a prima facie case of retaliation, the plaintiff must show that (1) she engaged in a protected activity; (2) the employer took adverse action against her; and (3) a causal connection existed between the protected activity and the adverse action.  See Von Gunten v. Maryland, 243 F.3d 858, 863 (4th Cir. 2001).  The plaintiff, however, can provide no evidence that she engaged in any protected activity.  At best, the plaintiff can demonstrate that she indicated to Summerlin her desire to not be treated like Rosa Parks, apparently a reference to being mistreated because of her race.  However, this comment was made to a subordinate of the plaintiff's in response to a short delay in obtaining some information that the plaintiff had requested, and fails to rise to the level of a complaint about racial discrimination.  Even if the "Rosa Parks" comment could be construed as a complaint about discrimination, the plaintiff cannot demonstrate that she took any legally protected activity.

Under the doctrine laid out by the Supreme Court in Faragher v. City of Boca Raton, 524 U.S. 775 (1998), and Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998), an employer may raise an affirmative defense to a charge of discrimination and retaliation, if it can demonstrate "(a) that the employer exercised reasonable care to prevent and correct promptly any . . . harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Id. at 765; Faragher, 524 U.S. at 807.  In the instant case, OAV had a clearly-articulated harassment policy.  Defendant's Exhibit D.  The plaintiff was not subject to any "tangible employment action," such that the Faragher-Ellerth doctrine would be inapplicable.  Although

16

the plaintiff avers that she never received a copy of the policy, her failure to make any complaint whatsoever to any of her superiors or fellow physicians means that her claim of retaliation cannot survive summary judgment.  See, e.g., Barrett v. Applied Radiant Energy Corp., 240 F.3d 262, 267 (4th Cir. 2001) (noting that a plaintiff's "conversations with her colleagues" would not be sufficient to constitute a complaint of harassment within the meaning of Faragher and Ellerth).

Even if the plaintiff could demonstrate that she engaged in protected activity and her employer took adverse action against her, she would still be unable to succeed on her claim for retaliation, because she has failed to demonstrate a causal connection between the protected activity and any adverse employer action.  The plaintiff cannot demonstrate that any of the physician-defendants knew about her "Rosa Parks" comment to Summerlin.  Further, the comment took place sometime prior to September 1, 2004.  The plaintiff actually left OAV in August of 2005, nearly a year later.  This passage of time demonstrates the lack of a causal link between the time a defendant knew of the plaintiff's protected activity and the time the plaintiff claims she was constructively discharged.  See Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (noting that passage of time cannot generally demonstrate causation unless the "temporal proximity between an employer's knowledge of protected activity and an adverse employment action" is "very close").  Therefore, the passage of eleven months between the alleged protected activity and the alleged constructive discharge cannot, by itself, provide the causal link required for the plaintiff to make a prima facie case of retaliation.  Accordingly, her claim for retaliation, whether under Title VII or section 1981, cannot withstand summary judgment.

iii.  Hostile Work Environment

The plaintiff also claims that she was subject to a hostile work environment.  To establish

a prima facie case of hostile work environment, the plaintiff must offer specific evidence that

shows that (1) she experienced unwelcome harassment; (2) the harassment was based on her

gender, race, color, or age; (3) the harassment was sufficiently severe or pervasive to alter the

conditions of employment and create an abusive atmosphere; and (4) there is some basis for

imposing liability on the employer.  Bass v. E.I. Dupont de Nemours & Co., 324 F.3d 761, 765

(4th Cir. 2003).  In determining whether a hostile work environment exists, a view of the totality

of the circumstances is proper, including "the frequency of the discriminatory conduct; its

severity; whether it is physically threatening or humiliating or a mere offensive utterance; and

whether it unreasonably interferes with the employee's work performance."  Harris v. Forklift

Sys., Inc., 510 U.S. 17, 23 (1993).  See also Bass, 324 F.3d at 765.  To amount to a change in the

terms or conditions of employment, discriminatory conduct must be extreme.  Faragher v, City of

Boca Raton, 524 U.S. 775, 788 (1998).

In the instant case, even assuming the truth of the plaintiff's allegations, the conduct

alleged simply does not rise to the level of creating a hostile work environment.  Specifically,

none of the alleged discriminatory acts serve to alter the terms and conditions of employment.

The plaintiff's terms and conditions of employment were not altered when patients were

diverted, nor were they altered when she was forced to repay a debt to the practice.  In fact, an

audit that the plaintiff demanded when she was confronted with the debt confirmed that she did

indeed owe the practice; and the two independent audits of OAV's patient referrals produced no

evidence that the plaintiff was having patients referred away from her.  The other alleged

18

discriminatory acts do not even rise to the level of adverse employment actions, as indicated supra.

Although the plaintiff claims that she was constructively discharged, and that such discharge constitutes an adverse employment action, the evidence demonstrates that the plaintiff voluntarily resigned from OAV. Although she now claims that she was discriminated against for almost her entire time at OAV, the plaintiff didn't resign after any of the major incidents she cites occurred. In fact, she set up a new corporation in February of 2005, but waited until early June to submit her resignation, and until August of 2005 to actually leave OAV. Although an employee is entitled to relief even when not formally discharged, she must prove that her employer has "deliberately ma[de] the working conditions intolerable in an effort to induce the employee to quit." Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 186 (4th Cir. 2004) (quotation omitted). "Because the claim of constructive discharge is so open to abuse by those who leave employment of their own accord, this Circuit has insisted that it be carefully cabined." Paroline v. Unisys Corp., 879 F.2d 100, 114 (4th Cir. 1989). In Honor, the Fourth Circuit rejected a claim of constructive discharge where the plaintiff's complaints centered around the conduct of a co-worker who was not an employer. Honor, 383 F.3d at 187. Here, the plaintiff's chief complaints are about her treatment by Summerlin and other members of OAV staff, not by her purported physician-supervisors. Further, the plaintiff has provided no evidence that her treatment at the hands of these subordinates rose anywhere close to being objectively intolerable. Therefore, summary judgment is appropriate in favor of the defendants on the plaintiff's claim of hostile work environment.

Even were the plaintiff permitted to make a claim under Title VII, and even were she able

to make out a prima facie case under either Title VII or section 1981, summary judgment against her would still be appropriate on those claims because the defendants have proffered legitimate, non-discriminatory reasons for their actions, and the plaintiff has failed to demonstrate that these reasons are merely pretextual.  The plaintiff's chief allegations of discrimination center on whether she was kept "out of the loop" with regard to business decisions of the practice and whether patients that had been referred to her were being redirected to see other doctors at OAV. The defendant-physicians, however, have indicated that they share the plaintiff's complaints, and they have traced the problem to the fact that Jane Summerlin, the practice administrator, was overloaded with work and was not good at delegating tasks.  In his deposition testimony concerning Summerlin's work, Dr. Shall testified that "Jane does not delegate well and Jane is very, very overloaded so things tend to get thrown to the back burner, in quotation marks.  And that is a fairly common occurrence.  It has happened to every single partner, they all say the same thing."  Deposition of Dr. Shall, Defendants' Exhibit I, at 16-17.  Further, he indicated that "pretty much all the physicians felt they were discriminated against by Jane, for the reasons I told you: Their needs, wants and desires tend to take a back seat."  Id. at 17.  Dr. Wagner also indicated that the problems were common to all of the doctors: "[W]e all had that problem, that's not a Bragg-specific problem.  We all had a problem with Jane having things not being done on an appropriate time schedule, but we have all battled that.  I battled that with Jane for 30 years, 25, so she discriminated against all of us."  Deposition of Dr. Wagner, Defendants' Exhibit H, at 85.  Dr. Cohn indicated that often he would give a task to Summerlin to do and she would procrastinate to the point where, if he wanted it to get done, he would need the support of the rest of the physicians pressuring Summerlin to get the task done.  Deposition of Dr. Cohn,

20

Defendants' Exhibit E, at 147.

With regard to patient diversion, the defendants have introduced evidence that one individual specifically named by the plaintiff as having been diverted was actually originally referred to a different physician at OAV.  See Defendants' Exhibits J & K.  The defendants acknowledge that there may have been some mistaken misreferrals, but the plaintiff has provided no evidence that any intentional patient diversion occurred.  See Deposition of Amal Sein, Defendants' Exhibit T, at 65 (indicating that OAV's front desk staff would "never give [a patient referred to the plaintiff] to another doctor without an okay from her"); Deposition of Leslie Weimer, Defendants' Exhibit L, at 63 (stating that no one ever instructed her or anyone else to divert the plaintiff's patients away from her).  The plaintiff has provided no evidence that the defendants' explanation is a pretext.  Therefore, the plaintiff cannot meet her burden with regard to her claims for discrimination under Title VII and § 1981, and summary judgment in favor of the defendants is appropriate.

C.  State-law Claims

i.  Breach of Employment Agreement

The plaintiff alleges that the Agreement she entered into with OAV in 1999 was breached by the defendants' diversion of patients away from her.  However, the contract in question specifically bars the plaintiff from claiming a right to any specific patient.  Defendants' Exhibit A, at ¶ 4.  The plaintiff alleges that the patient diversion resulted in a loss of bonuses, as the patients in question were seen by other physicians at OAV.  However, with no contractual right to have any patient assigned to her, the plaintiff is without a contractual right to any bonus from treating patients.  Therefore, her claim of breach of contract must fail.

Further, although most of the plaintiff's evidence regarding patient diversion is inadmissible as hearsay, even were the court to consider such evidence, the plaintiff would still be unable to succeed with her breach of contract claim, because none of her evidence indicates that any of the named defendants was diverting patients or even knew about such diversion. Therefore, summary judgment is appropriate in favor of the defendants on the plaintiff's breach of contract claim.

ii.  Breach of Shareholder Agreement

The plaintiff further alleges that the defendants breached the shareholder agreement by failing to provide her with proper notice of the meeting at which the board voted on the termination of Dr. Kirven.  Although the plaintiff is correct in noting that the ten-day notice requirement for shareholder meetings was not met in this case, this is not the same as a breach of the shareholder agreement.  See VA. CODE ANN. § 13.1-658(A).  Further still, the fact that the plaintiff gave her proxy to Dr. Kirven as a member of the board of directors establishes her actual presence at the shareholder's meeting of March 2, 2005.  Virginia law is clear that a shareholder waives her objection to the form of notice of a meeting by actually attending the shareholders' meeting.  VA. CODE ANN. § 13.1-659(B)(1).  Therefore, the plaintiff's claim of breach of the shareholder agreement cannot withstand summary judgment.

iii.  Breach of Fiduciary Duty

The plaintiff claims that the defendants breached their fiduciary duty to her as a minority shareholder.  However, she fails to identify any action taken by another OAV shareholder against her in her capacity as shareholder that could possibly constitute such a breach.  Further, Virginia law does not impose the duties of a fiduciary on a minority shareholder toward other minority

22

shareholders.  Berman v. Physical Medicine Assocs., 225 F.3d 429, 433 (4th Cir. 2000).  OAV's

shareholders were, in fact, all minority shareholders.  Therefore, this claim cannot withstand the

defendants' motion for summary judgment.

iv.  Constructive and Actual Fraud

The plaintiff alleges that the defendants committed constructive and actual fraud upon

her, and indicated in deposition testimony that her claim that Dr. Cohn represented to her prior to

hiring her that she would have voting privileges after twelve months of employment, whereas in

actuality she was forced to wait eighteen months.  However, a claim of fraud in Virginia

"requires a showing by clear and convincing evidence of an intentional and knowing

misrepresentation of a material fact, made with the intent to mislead, and relied upon by another

to his or her detriment."  Flippo v. CSC Assocs. III, LLC, 262 Va. 48, 66 (2001).  A claim for

constructive fraud requires the same proof, absent the showing of actual intent to mislead.

Evaluation Research Corp. v. Alequin, 247 Va. 143, 148 (1994).

The plaintiff has provided no evidence that Dr. Cohn knew the alleged statement

regarding voting rights to be false when it was made, and in fact has admitted that she has no

reason to believe that anyone knew that it was false.  Deposition of Dr. Bragg, Defendants'

Exhibit A, at 21-31.  When asked about any other false statements of material fact made to her,

the plaintiff refused to answer the question.  Id. at 300-02.  In her response to the defendants'

motion for summary judgment, however, the plaintiff now alleges that the defendants committed

fraud by manipulating financial documents.  The record, however, makes clear that the plaintiff

was provided with regular financial statements.  The plaintiff has cited no specific case of

manipulated documents, and therefore there exists no evidence of fraud.  Thus, summary

judgment in favor of the defendants is warranted on the plaintiff's fraud claim.

v. Statutory Conspiracy and Conspiracy

The plaintiff alleges that the defendants are liable for statutory conspiracy, common-law conspiracy, and simply "conspiracy" in that they conspired with one another to increase the bonuses that each defendant-physician would receive by diverting patients away from the plaintiff, both before and after the plaintiff left OAV. Regardless of the fact that the plaintiff has no admissible evidence that such diversion actually took place, Virginia law precludes this claim, because a corporation cannot conspire with itself. Nedrich v. Jones, 245 Va. 465, 473 (1993). "[A] conspiracy was a legal impossibility because a principal and an agent are not separate persons for purposes of the conspiracy statute. One entity existed, the [corporation], and a single entity cannot conspire with itself." Charles E. Brauer Co., Inc. v. NationsBank of Va., N.A., 251 Va. 28, 36 (1996).

The plaintiff claims that the physician-defendants and Summerlin, although agents of OAV, were acting outside the scope of their employment, and therefore could be found to have conspired with OAV. See, e.g., Marmott v. Maryland Lumber Co., 807 F.2d 1180, 1185 (4th Cir. 1986). The plaintiff, however, can provide the court with no evidence of any act taken by any member of the alleged conspiracy outside the scope of his or her agency. Although the physician-defendants may have had a personal stake in diverting patients to themselves, Virginia courts have only applied the "personal stake" exception to the inter-corporate immunity rule "where the individual defendants had a personal stake independent of their relationship with the alleged co-conspirator corporate defendant." Douty v. Irwin Mortgage Corp., 70 F.Supp.2d 626, 633 (E.D. Va. 1999). In the instant case, any personal stake that an individual defendant may

have had was not independent of his or her relationship with OAV.

Even were the intra-corporate immunity rule not a bar to the plaintiff's allegations of conspiracy, the claims would still fail, as the plaintiff can demonstrate no evidence of any conspiracy at all.  The plaintiff failed to identify any overt act done in furtherance of the conspiracy, instead referring only to patient diversion.  Further, she fails to provide any evidence that the defendants agreed to act in concert to divert her patients.  The plaintiff has submitted declarations in support of her claim that, after she had left OAV, the practice conspired to conceal her new contact information from old patients of hers who may have called OAV to make an appointment with her.  The declarations are peppered with hearsay, but even if they are to be considered for their truth, they fail to controvert the defendants' assertion that the plaintiff herself simply did not provide her new contact information to OAV when she left.  See also Deposition of Dr. Bragg, Defendants' Exhibit C, at 293 (acknowledging that she did not give her contact information to OAV when she left the practice).  Accordingly, summary judgment in favor of the defendants is warranted as to the plaintiff's claims of conspiracy, whether couched as statutory conspiracy, common-law conspiracy, or simply "conspiracy."

vi.  Interference with Business Expectancy

The plaintiff claims that the defendants interfered with a business expectancy by failing to refer her old patients to her new practice when they called OAV in search of an appointment. Virginia law recognizes this tort, but requires there to be a contract expectancy, knowledge of that expectancy by the defendants, intentional interference, and also improper means.  Maximus, Inc. v. Lockheed Info. Mgmt. Sys. Co., 254 Va. 408, 414 (1997).  Here, the plaintiff has acknowledged that she did not provide her new contact information to the defendants when she

25

left the practice.  The record indicates that an OAV employee stumbled upon the plaintiff's new

contact information, and from that point on, the plaintiff's former patients who called OAV to

get an appointment with her were given what OAV believed to be the plaintiff's new phone

number.  There is therefore no evidence that any defendant acted with improper means.  Further,

the plaintiff cannot demonstrate any reasonably certain expectancy, as the plaintiff had no

contract with potential patients.  Thus, this claim cannot withstand summary judgment.

vii.  Interference with Contract

Finally, the plaintiff claims that the defendants interfered with the Model Parity Physician

Agreement and the shareholder agreement, ultimately inducing OAV to breach its contracts with

the plaintiff.  However, this claim fails for the same reason as the plaintiff's conspiracy claims

fail: the defendants were not acting outside the scope of their agency with OAV, and therefore

must be considered as a single entity.  Because Virginia law provides no cause of action against

someone for intentionally interfering with his own contract, see Chaves v. Johnson, 230 Va. 112,

120 (1985), the claim cannot succeed.  The plaintiff has produced no evidence indicating that the

defendants acted outside the scope of their agency.  Even if the plaintiff had provided such

evidence, the claim would fail because she has failed to proffer any evidence that her contractual

rights were interfered with, much less that any defendant tortiously interfered with any

contractual right.  The plaintiff's claim for tortious interference with contract, then, must fail.

V.  Conclusion

Because the plaintiff has failed to demonstrate that a genuine issue of material fact exists

as to any of her claims, and because the defendants are entitled to judgment as a matter of law,

the court **GRANTS** the defendants' Motion for Summary Judgment with respect to all of the

plaintiff's claims.  The plaintiff's claims are **DISMISSED**.

The Clerk is **REQUESTED** to send a copy of this Order to counsel of record for all

parties.

It is so **ORDERED**.


                                              _____
                                                      /s/
                                                 Jerome B. Friedman
                                    UNITED STATES DISTRICT JUDGE

March 2, 2007
Norfolk, Virginia